# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

JANE DOE, Individually, and on behalf
of all others similarly situated,

      **Plaintiff,**

v.

**HEALTHEC, LLC**

      **Defendant.**

Case No. _____

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff, JANE DOE (hereinafter, "Plaintiff"), individually, and on behalf of all others similarly situated, for her causes of action against Defendant, HEALTHEC, LLC ("Defendant" or "HealthEC"), alleges upon personal knowledge as to her own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.    This action arises out of Defendant's unauthorized disclosure to cybercriminals of the confidential medical information, Personally Identifying Information[1] ("PII") and Protected Health Information ("PHI")[2] (collectively, "Private Information") of millions of current and

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

[2] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.*, and its implementing regulations ("HIPAA"), "protected health information" is defined as individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103 *Protected health information*. "Business Health information such as diagnoses, treatment information, medical test results, and prescription information are

1

4877-6643-8817, v. 2

former patients, members, and participants of its clients, including Plaintiff and the proposed Class Members, between July 14, 2023 and July 23, 2023, including their names, addresses, dates of birth, Social Security numbers, Taxpayer Identification numbers, Medical Record numbers, Medical information (including but not limited to Diagnosis, Diagnosis Code, Mental/Physical Condition, Prescription information, and provider's name and location), Health insurance information (including but not limited to beneficiary number, subscriber number, Medicaid/Medicare identification), and/or Billing and Claims information (including but not limited to patient account number, patient identification number, and treatment cost information) (the "Data Breach").[3]

2.      Located in Edison, New Jersey, HealthEC is a company that provides services better described as "healthcare coordination and patient/member outreach services" and technology services to health organization clients including insurance plans, government agencies, and healthcare providers in eighteen (18) states, including to Tennessee's state Medicaid program, the Division of TennCare ("TennCare").[4]

3.      As a condition of providing services, HealthEC requires its clients' health insurance plan members, patients, and beneficiaries, including Plaintiff and the Class Members, to provide Defendant with their Private Information, including their most sensitive and private medical

---

considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information. *Summary of the HIPAA Privacy Rule*, DEP'T FOR HEALTH & HUM. SERVS., https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html (last accessed Apr. 16, 2020). Defendant is a Business Associate under HIPAA, and some of the data compromised in the Data Breach that this action arises out of is "protected health information," subject to HIPAA.
[3] *See* HealthEC Notice of Cyber Incident, available at https://www.healthec.com/cyber-incident/ (last acc. Jan. 29, 2024), **attached as Exhibit A ("Website Data Breach Notice");** HealthEC notice letter to Plaintiff, Dec. 22, 2023, **Exhibit B ("Data Breach Notice").**
[4] https://www.healthec.com/ (last acc. Jan. 29, 2024); Data Breach Notices, Ex. A, B.

information, diagnoses, and treatment, which HealthEC stores in its information technology computer network systems.

4.     HealthEC failed to undertake adequate measures to safeguard the Private Information of Plaintiff and the proposed Class Members, including failing to implement industry standards for data security, and failing to properly train employees on cybersecurity protocols, resulting in the Data Breach.

5.     In the Data Breach, some of the most vulnerable Tennesseans' sensitive Private Information was acquired by cybercriminals and exposed to public—including not only their identifying information such as names and addresses, dates of birth, and Social Security numbers, but medical diagnoses and mental health conditions, as well as billing and claims information. Now that this Private Information has been made public, it cannot again be made private again. Now that the bell has been rung, it cannot be unrung.

6.     Although HealthEC has remained silent on when it discovered the Data Breach— on information and belief in July 2023, and certainly by the conclusion of its investigation on or about October 24, 2023—Defendant failed to immediately notify and warn Data Breach victims of the unauthorized disclosure of their Private Information, waiting until October 26, 2023 to begin notifying some victims, and until December 2023 to notify Plaintiff and other Class Members, of the Data Breach.

7.     As a direct and proximate result of Defendant's failures to protect Plaintiff's and the Class Members' sensitive Private Information and warn them promptly and fully about the Data Breach, Plaintiff and the proposed Class have suffered widespread injury and damages necessitating Plaintiff seeking relief on a class wide basis.

3

4877-6643-8817, v. 2

## PARTIES

8.    Plaintiff is a natural person and adult citizen of the State of Tennessee where she intends to remain, residing in Castalian Springs, Tennessee, in Sumner County. She is an insured of TennCare whose Private Information was entrusted to Defendant and victim of the Data Breach.

9.    Defendant, HEALTHEC, LLC ("Defendant" or "HealthEC"), is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business located at 343 Thornall Street, Suite 630 Edison, New Jersey 08837.

10.    Defendant has contracted with the State of Tennessee, Division of TennCare, to provide its technology services in Tennessee.

## JURISDICTION & VENUE

11.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

12.    This Court has personal jurisdiction over HealthEC because Defendant has availed itself of the rights and benefits of the State of Tennessee by engaging in activities including (i) providing services throughout the United States in this judicial District; (ii) conducting substantial business in this forum; (iii) contracting, on information and belief within this judicial District, to provide services in Tennessee; and/or (iv) engaging in other persistent courses of conduct and/or deriving substantial revenue from services provided in Tennessee and in this judicial District.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a

4

4877-6643-8817, v. 2

substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Middle District of Tennessee.

## FACTUAL BACKGROUND

### A. Defendant, HealthEC

14.     Located in Edison, New Jersey, HealthEC provides technology platforms to its clients, medical providers, health insurance plans and payors, and governmental agencies, described as "healthcare coordination and patient/member outreach services."[5]

15.     As Defendant describes, HealthEC "delivers fully integrated analytics and insights that enable value-based health systems and care organizations to identify high-risk patients, close care gaps and recognize barriers to optimal care."[6]

16.     In particular, HealthEC's software platform "integrat[es] clinical with claims data to create a community health record for each patient," stating that [b]y seamlessly connecting everyone across any healthcare system, a full picture of the patient continuum of care becomes more apparent," with the aim of producing reports "that enable care coordinators to improve patient outcomes."[7]

17.     Defendant contracts with 26 clients in 18 states, including in Tennessee, and including over 1 million healthcare professionals, over 8 million members, and over 1.4 thousand "Regional & National Payers."[8]

18.     The health organizations with whom HealthEC contracts include: Providers such as Accountable Care Organizations, Clinically Integrated Networks & Independent Practice

---

[5] *See* Website Data Breach Notice, Ex. A; Data Breach Notice, Ex. B.
[6] https://www.healthec.com/
[7] *Id*.
[8] *Id*.

5

Associations, Medical Societies, Primary Care Associations & Community Health Centers, and Hospitals & Health Systems; Payors, such as Medicare Advantage Plans, Medicaid Managed Care Organizations, and Employer Health Plans; and Governmental organizations, such as State Medicaid Agencies, and State & County Health Departments.[9]

19.     Defendant provides its "healthcare coordination and patient/member outreach services" to the State of Tennessee's Division of TennCare ("TennCare"), as well as to Corewell Health, HonorHealth, University Medical Center of Princeton Physicians' Organization, Community Health Care Systems, Beaumont ACO, KidneyLink, Alliance for Integrated Care of New York, LLC, Compassion Health Care, Metro Community Health Centers, Advantage Care Diagnostic & Treatment Center, Inc., Long Island Select Healthcare, Mid Florida Hematology & Oncology Centers, P.A, d/b/a Mid-Florida Cancer Centers, Illinois Heath Practice Alliance, LLC, East Georgia Healthcare Center, Hudson Valley Regional Community Health Centers, and Upstate Family Health Center, Inc.[10]

20.     TennCare, as administering Tennessee's Medicaid program, provides healthcare to disabled individuals, low-income Tennesseans, and others qualifying persons.[11]

21.     Indeed, HealthEC has contracted with TennCare to provide it with Defendant's platforms, including the "multi-payer Care Coordination Tool (CCT)" which "allow(s) Health Link organizations to better coordinate care for their attributed members[,] receiving near real-time ADT feeds from all hospitals across Tennessee."[12]

---

[9] *Id.*

[10] HealthEC Notice of Cyber Incident, available at https://www.healthec.com/cyber-incident/ (last acc. Jan. 29, 2024), Ex. A; Ex. B.

[11] See https://www.tn.gov/tenncare/members-applicants/eligibility/tenncare-medicaid.html#:~:text=TennCare%20is%20the%20state%20of,can%20apply%20anytime%20for%20TennCare.

[12] Tennessee Health Link: Provider Operating Manual 2023, available at https://www.tn.gov/content/dam/tn/tenncare/documents2/HealthLinkProviderOperatingManualJu

22.     The CCT is a:

cloud-based application that draws from Medicaid claims data, encounter data from
TennCare's contracted managed care organizations (MCOs), immunization data
from the Tennessee Department of Health's (TDH) statewide immunization
information system (TennIIS), and information about admissions, discharges and
transfers (ADTs) provided by hospitals via data exchange partners, Tennessee
Hospital Association (THA), East Tennessee Health Information Network (etHIN)
and Community Hospital Systems (CHS).[13]

23.     As a condition of providing its services, HealthEC requires that its customers'

members and patients provide Defendant with their private, sensitive Private Information,

including their , including their names, addresses, dates of birth, Social Security numbers,

Taxpayer Identification numbers, Medical Record numbers, Medical information (including but

not limited to Diagnosis, Diagnosis Code, Mental/Physical Condition, Prescription information,

and provider's name and location), Health insurance information (including but not limited to

beneficiary number, subscriber number, Medicaid/Medicare identification), and/or Billing and

Claims information (including but not limited to patient account number, patient identification

number, and treatment cost information), which HealthEC stores in its computer network systems.

24.     Defendant acknowledges the importance of safeguarding the Private Information it

collects, stating in its Data Breach Notice that it "tak[e] this event, your privacy, and the security

of information in our care very seriously."[14]

25.     Further, on information and belief, HealthEC maintains a Privacy Policy, accessible

online, which states "HealthEC will not disclose (and will take commercially reasonable steps to

prevent the accidental disclosure of) your Personal Info to third parties (i.e., persons or entities that

---

ly23.pdf

[13] National Academy for State Health Policy, *Tennessee's Care Coordination Tool: Marshaling
Data to Help Providers Coordinate Care,* Sept. 1, 2021, avail at
https://nashp.org/tennessees-care-coordination-tool-marshaling-data-to-help-providers-
coordinate-care/
[14] Website Data Breach Notice, Exhibit A; Data Breach Notice, Ex. B.

7

4877-6643-8817, v. 2

are not affiliates of HealthEC), whether for such third parties' marketing purposes or otherwise."[15]

26.     Therein, Defendant goes onto say that "HealthEC has implemented generally accepted standards of technology and operational security in order to protect Personal Info from loss, misuse, alteration, or destruction. Only authorized HealthEC personnel are provided access to Personal Info, and these employees are required to treat this information as confidential."[16]

27.     In addition, HealthEC, by and through its agents and employees, represented to its customers, their members and patients, that Defendant would adequately protect their Private Information and not disclose said information other than as authorized.

28.     Plaintiff and the proposed Class Members, including current and former patients of customers of HealthEC, would not have entrusted their Private Information to Defendant in the absence of its promises to safeguard that information.

29.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and the proposed Class Members' Private Information, Defendant assumed legal and equitable duties to Plaintiff, and the members of the Proposed Class, and knew or should have known that it was responsible for protecting her and their Private Information from unauthorized disclosure.

30.     At all times Plaintiff and the members of the Proposed Class, have taken reasonable steps to maintain the confidentiality of her and their Private Information; and, Plaintiff and the proposed Class Members, as current and former patients and members of customers of HealthEC, relied on Defendant to keep their Private Information confidential and securely maintained.

---

[15] HealthEC, LLC, Privacy Policy, avail. at
https://mneconnect.healthec.com/ProdMNeConnectAdmin/Privacy_Policy.aspx (last acc. Jan. 29, 2024), **attached as Exhibit C.**
[16] *Id*.

8

**B. HealthEC Fails to Adequately Safeguard Private Information—the Data Breach**

31. Plaintiff and the proposed Class Members are current and former patients, plan members, participants, beneficiaries and other customers of Defendant's customers, including of the State of Tennessee, Division of TennCare ("TennCare").

32. As a condition of providing services to its customers, including TennCare, HealthEC required Plaintiff and the proposed Class Members to provide it with their sensitive, Private Information, including their names, addresses, dates of birth, Social Security numbers, Taxpayer Identification numbers, Medical Record numbers, Medical information (including but not limited to Diagnosis, Diagnosis Code, Mental/Physical Condition, Prescription information, and provider's name and location), Health insurance information (including but not limited to beneficiary number, subscriber number, Medicaid/Medicare identification), and/or Billing and Claims information (including but not limited to patient account number, patient identification number, and treatment cost information).

33. HealthEC then collected and maintained said Private Information in its computer information technology systems and networks.

34. From July 14, 2023 and July 23, 2023, the Private Information of HealthEC's client's current and former patients and members—Plaintiff and the Class Members—was unauthorizedly accessed ***and copied*** by third-party cybercriminals during a cyberattack to Defendant's computer network systems (the Data Breach).[17]

35. According to Defendant's website notification on December 22, 2023, at an unstated time, HealthEC "became aware of suspicious activity potentially involving its network and promptly began an investigation," which "determined that certain systems were accessed by

---

[17] *See* HealthEC Notice of Cyber Incident, available at https://www.healthec.com/cyber-incident/ (last acc. Jan. 29, 2024); Data Breach Notice, **Exhibit A.**

9

4877-6643-8817, v. 2

an unknown actor between July 14, 2023 and July 23, 2023, and during this time certain files were copied."[18]

36.     After the foregoing "investigation," HealthEC actually reviewed the information in the copied files, which was completed on or around October 24, 2023, and determined that the information unauthorizedly accessed included a vast array of Private Information:

> The types of information identified through our review varies by individual but includes name, address, date of birth, Social Security number, Taxpayer Identification number, Medical Record number, Medical information (including but not limited to Diagnosis, Diagnosis Code, Mental/Physical Condition, Prescription information, and provider's name and location), Health insurance information (including but not limited to beneficiary number, subscriber number, Medicaid/Medicare identification), and/or Billing and Claims information (including but not limited to patient account number, patient identification number, and treatment cost information).[19]

37.     In the July 2023 Data Breach, cybercriminals accessed and copied the above Private Information of the health plan participants and patients of numerous medical providers, health insurance plans, and governmental entities, including: State of Tennessee, Division of TennCare, Corewell Health, HonorHealth, University Medical Center of Princeton Physicians' Organization, Community Health Care Systems, Beaumont ACO, KidneyLink, Alliance for Integrated Care of New York, LLC, Compassion Health Care, Metro Community Health Centers, Advantage Care Diagnostic & Treatment Center, Inc., Long Island Select Healthcare, Mid Florida Hematology & Oncology Centers, P.A, d/b/a Mid-Florida Cancer Centers, Illinois Heath Practice Alliance, LLC, East Georgia Healthcare Center, Hudson Valley Regional Community Health Centers, and Upstate Family Health Center, Inc.[20]

38.     According to HealthEC, on or about October 26, 2023, it began notifying *its*

---

[18] *Id*.
[19] *Id*.
[20] *Id*.

4877-6643-8817, v. 2

*customers* of the Data Breach and worked with them to notify impacted persons—Defendant did not begin directly notifying impacted persons until December 22, 2023.[21]

39.     On December 21, 2023, Defendant reported the Data Breach to the United States Department for Health and Human Services, Office for Civil Rights ("HHS OCR"), stating that the cyberattack was a Hacking/IT Incident to its network server, and impacting 4,452,782 persons.[22]

40.     On December 22, 2023, Defendant reported the Data Breach to the Maine Attorney General, reporting that it occurred from July 14, 2023 to July 23, 2023; inconsistently, that the Data Breach was not discovered until October 24, 2023; that the Data Breach was the result of an "External system breach (hacking)" attack; that the Data Breach impacted 112,005 individuals; and that it began notifying consumers on December 22, 2023.[23]

41.     On December 22, 2023, HealthEC began directly notifying affected individuals of the Data Breach. At that time, Defendant posted the Notice of the HealthEC LLC Cyber Security Event ("Website Data Breach Notice")[24] on its website, and began mailing substantially identical Data Breach Notices to persons whose Private Information was unauthorized accessed, copied, and compromised in the Data Breach.[25]

42.     Both Defendant's Website Data Breach Notice and mailed Data Breach Notices vaguely described the occurrence of the Data Breach as described above, and stated:

> We take this event, your privacy, and the security of information in our care very seriously. Upon learning of the suspicious activity, we moved immediately to investigate and respond. The investigation included confirming the security of our

---

[21] *Id*.

[22]

[23]*See* HealthEC Data Breach Notification to the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/4680936e-e496-43ed-a35d-59ece9b523b6.shtml

[24] Website Data Breach Notice, Ex. A

[25] Data Breach Notice, Ex. B

4877-6643-8817, v. 2

network, reviewing the relevant files and systems, notifying potentially affected clients, and notifying federal law enforcement. As part of our ongoing commitment to your privacy and the security of information in our care, we are also reviewing our existing policies and procedures.[26]

43.     Further, Defendant's Website Data Breach Notice and Data Breach Notice recommended that individuals should "remain vigilant against incidents of identity theft and fraud by reviewing account statements, explanation of benefits statements, and monitoring free credit reports for suspicious activity and to detect errors" and promptly report suspicious activity.[27]

44.     In addition, HealthEC's Data Breach Notice informed affected persons of their abilities to request free credit reports; place initial or extended fraud alerts on their credit files; and place credit freezes on their credit reports.[28]

45.     Further still, HealthEC offered individuals whose Private Information was affected in the Data Breach 12 months of credit monitoring and identity protection services through TransUnion.[29]

46.     While Defendant's Website Data Breach Notice and mailed Data Breach Notices vaguely informed affected persons, Plaintiff and the proposed Class Members, of the occurrence of the Data Breach as described above, it failed to inform them exactly how the Data Breach occurred (i.e., an external system hack, ransomware attack, or phishing scheme) as stated to the Maine Attorney General and HHS OCR; failed to state exactly when the Data Breach was discovered; and failed to state why it took HealthEC so long to notify affected persons of the unauthorized disclosure, and physical copying, of their Private Information to and by cybercriminals.

---

[26] Website Data Breach Notice, Ex. A; Data Breach Notice, Ex. B.
[27] *See Id.*
[28] Data Breach Notice, Ex. B.
[29] *Id.*

12

4877-6643-8817, v. 2

47.     On information and belief, Defendant did not have adequate security protocols to prevent, detect, and stop the cybercriminals from executing the cyberattack on HealthEC's systems and accessing the voluminous Private Information of Plaintiff and the proposed Class Members which HealthEC stored on its systems, in the Data Breach.

48.     Further, HealthEC failed to adequately train its employees on reasonable cybersecurity protocols and failed to implement reasonable security measures, causing it to lose control over its clients' and customers' current and former patients,' members' and other participants' Private Information in the Data Breach.

49.     Defendant's tortious conduct and breach of contractual obligations, as explained hereinafter, are evidenced by its failure to recognize the July 2023 Data Breach until cybercriminals had already accessed the data—and until October 2023 based on Defendant's reports—meaning HealthEC had no effective means to detect and prevent attempted data breaches.

50.     As a result of HealthEC's Data Breach, its victims face a lifetime risk of identity theft, as it includes sensitive information that cannot be changed, like their dates of birth and Social Security numbers. Accordingly, HealthEC's credit monitoring and identity theft protection through TransUnion is wholly insufficient to compensate Plaintiff and the Class Members for their damages which has been and imminently will be caused by the Data Breach.

51.     Indeed, as a result of the Data Breach which Defendant permitted to occur by virtue of its inadequate data security practices, Plaintiff and the proposed Class Members have suffered injury and damages, as set forth herein.

13

4877-6643-8817, v. 2

### C. Plaintiff's Experience

52.     Plaintiff has been a member and participant in the State of Tennessee, Department of TennCare ("TennCare") since 2019.

53.     Plaintiff suffers from significant mental health conditions, including severe, chronic depression, Post-Traumatic Stress Disorder, and other medical and/or mental health conditions for which she received psychiatric, medical, and psychotherapeutic care and treatment.

54.     As a result of these conditions, Plaintiff has been determined to be fully disabled, and receives benefits and services from TennCare, including monetary benefits, health insurance benefits, and other services, as well as Social Security Disability benefits.

55.     Defendant provides its "healthcare coordination and patient/member outreach services" and information technology services, including CCT, to TennCare.

56.     As a result of the relationship between Defendant and TennCare, Plaintiff's *most sensitive* Private Information was provided to HealthEC, including her name, address, and Date of Birth, Social Security Number, Medical Information, Diagnosis, Health Insurance Information and Patient Identification Number.

57.     Plaintiff would not have permitted her Private Information to be entrusted to HealthEC in the absence of Defendant's representations and promises and mutual understanding that HealthEC would safeguard her Private Information.

58.     Indeed, Plaintiff is very careful to guard the confidentiality of her Private Information, especially including her private, sensitive medical information and diagnoses.

59.     Plaintiff received HealthEC's written notice of the Data Breach dated December 22, 2023.[30]

---

[30] *See* Data Breach Notice, **Exhibit B**.

14

4877-6643-8817, v. 2

60.     According to the Data Breach Notice, Plaintiff's name, address, and Date of Birth, Social Security Number, Medical Information, Diagnosis, Health Insurance Information and Patient Identification Number was unauthorized accessed and copied by cybercriminals in the Data Breach.

61.     Upon information and belief, based on the nature of the cyberattack, Plaintiff's Private Information which was unauthorized disclosed to and obtained by cybercriminals in the Data Breach is being used, and/or will imminently be used, for fraudulent and criminal purposes, and has been or imminently will be published to and sold on the Dark Web for fraudulent purposes and sale.

62.     As a direct result of the Data Breach that Defendant permitted to occur, Plaintiff has suffered injury-in-fact and damages, including: the unauthorized disclosure of Private Information itself, including on information and belief publication to the Dark Web.  In addition, as a result of the Data Breach, Plaintiff has been forced to expend time and effort to protect herself from identity theft resulting from the Data Breach, including, monitoring her credit reports and benefits statements, at least once a week; and Plaintiff will be forced to expend additional time and effort in the future to mitigate the consequences of the Data Breach, including monitoring her credit reports and benefit statements.

63.     Further, Plaintiff fears for her personal financial security and uncertainty over information disclosed in the Data Breach, and is experiencing severe emotional distress over the unauthorized disclosure of her most private medical information. She is experiencing feelings of anxiety, embarrassment, sleep disruption, stress, and fear because of the Data Breach, worsening her mental health conditions. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed

4877-6643-8817, v. 2

by law.

64.    Plaintiff was highly disturbed by the Data Breach's nature and the thought of cybercriminals accessing her highly sensitive Private Information—including her most private medical information involving mental health diagnoses and treatment—and the harm caused by the Data Breach. She was also outraged that HealthEC took months to notify her of the Data Breach, and, according to Defendant, that HealthEC did not discover the July 2023 Data Breach until October 2023, if true.

65.    As a result of HealthEC's Data Breach, Plaintiff faces a lifetime risk of identity theft, as it includes sensitive information that cannot be changed, like her date of birth and Social Security number.

**D.  This Data Breach was Foreseeable by Defendant.**

66.    Plaintiff and the proposed Class Members permitted their Private Information to be provided to HealthEC with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

67.    By failing to do so, Defendant put all Class Members at risk of identity theft, financial fraud, and other harms.

68.    Defendant tortiously failed to take the necessary precautions required to safeguard and protect the Private Information of Plaintiff and the Class Members from unauthorized disclosure. Defendant's actions represent a flagrant disregard of Plaintiff's and the other Class Members' rights.

69.    Plaintiff and Class Members were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. Defendant knew or should have known

16

4877-6643-8817, v. 2

of the inherent risks in collecting and storing Private Information and the critical importance of providing adequate security for that information.

70.     According to a Chief Strategy Officer at Clear DATA, "[i]t's no secret that healthcare is the industry most plagued by data breaches. Patient data is the most valuable, making it targeted by bad actors."[31]

71.     Moreover, healthcare companies are targeted because of their cybersecurity vulnerabilities: "...healthcare is also targeted because it is very vulnerable. Many healthcare providers use outdated IT infrastructure and operating systems that can no longer be patched or supported, such as Windows 7 and Windows Server 2008, even after Microsoft retired them. Further, more than half of medical devices operate on legacy systems, and 83% of medical imaging devices are on outdated operating systems that no longer receive patches/updates. This creates significant cybersecurity vulnerabilities and makes it much easier for bad actors to find an entry point into the network." [32]

72.     Cyber-attacks against healthcare organizations, such Defendant and its clients, are targeted and frequent. According to the 2019 Health Information Management Systems Society, Inc. ("HIMMS") Cybersecurity Survey, "[a] pattern of cybersecurity threats and experiences is discernable across U.S. healthcare organizations. Significant security incidents are a near-universal experience in U.S. healthcare organizations with many of the incidents initiated by bad actors..."[33]

---

[31] Sanjay Cherian, Forbes Magazine, "Healthcare Data: The Perfect Storm," January 14, 2022, available at https://www.forbes.com/sites/forbestechcouncil/2022/01/14/healthcare-data-the-perfect-storm/?sh=28523ee56c88 (last acc. June 19, 2023).
[32] *Id.*
[33] HEALTHCARE INFORMATION AND MANAGEMENT SYSTEMS SOCIETY, *2019 HIMSS Cybersecurity Survey*, available at
https://www.himss.org/sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report.pdf (last accessed December 7, 2022)

17

73.    In 2019, a record 1,473 data breaches occurred, resulting in approximately 164,683,455 sensitive records being exposed, a 17% increase from 2018.[34]

74.    Of the 1,473 recorded data breaches, 525 of them, or 35.64%, were in the medical or healthcare industry.[35]

75.    According to the Identity Theft Resource Center's January 24, 2022 report for 2021, "the overall number of data compromises (1,862) is up more than 68 percent compared to 2020. The new record number of data compromises is 23 percent over the previous all-time high (1,506) set in 2017. The number of data events that involved sensitive information (Ex: Social Security numbers) increased slightly compared to 2020 (83 percent vs. 80 percent)."[36]

76.    The increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including HealthEC. According to IBM's 2022 report, "[f]or 83% of companies, it's not if a data breach will happen, but when."[37]

77.    Furthermore, Defendant was aware of the risk of data breaches because such breaches have dominated the headlines in recent years. For instance, the 525 reported medical or healthcare data breaches reported in 2019 exposed nearly 40 million sensitive records (39,378,157), compared to only 369 breaches that exposed just over 10 million sensitive records (10,632,600) in 2018.[38]

---

[34] https://www.idtheftcenter.org/wp-content/uploads/2020/01/01.28.2020_ITRC_2019-End-of-Year-Data-Breach-Report_FINAL_Highres-Appendix.pdf (last accessed Dec. 7, 2022)
[35] *Ibid.*
[36] *See* "Identity Theft Resource Center's 2021 Annual Data Breach Report Sets New Record for Number of Compromises," Jan. 24, 2022, available at https://www.idtheftcenter.org/post/identity-theft-resource-center-2021-annual-data-breach-report-sets-new-record-for-number-of-compromises/ (last acc. Apr. 14, 2023).
[37] IBM, "Cost of a data breach 2022: A million-dollar race to detect and respond," available at https://www.ibm.com/reports/data-breach (last acc. Apr. 14, 2023).
[38] https://www.idtheftcenter.org/wp-content/uploads/2020/01/01.28.2020_ITRC_2019-End-of-Year-Data-Breach-Report_FINAL_Highres-Appendix.pdf  (last accessed Dec. 7, 2022), at pg. 15.

18

4877-6643-8817, v. 2

78.     According to the U.S. Department for Health and Human Services' "2022 Healthcare Cybersecurity Year in Review, and a 2023 Look-Ahead," "[h]ealthcare data breaches have doubled in 3 years."[39]

79.     The increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

80.     Private Information is of great value to hackers and cybercriminals, and the data compromised in the Data Breach can be used for a variety of unlawful and nefarious purposes, including ransomware and fraudulent misuse, and sale on the Dark Web,

81.     Private Information can be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and medical records. This can be accomplished alone, or in combination with other personal or identifying information that is connected, or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.

82.     Given the nature of the Data Breach, it was foreseeable that the compromised Private Information could be used by hackers and cybercriminals in a variety of different injurious ways. Indeed, the cybercriminals who possess the Class Members' Private Information can easily obtain Class Members' tax returns or open fraudulent credit card accounts in the Class Members' names.

**E.  HealthEC Failed to Comply with FTC Guidelines**

83.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices.

---

[39] U.S. Department for Health and Human Services, The Health Sector Cybersecurity Coordination Center (HC3), "2022 Healthcare Cybersecurity Year in Review, and a 2023 Look-Ahead," February 9, 2023, avail. at https://www.hhs.gov/sites/default/files/2022-retrospective-and-2023-look-ahead.pdf

19

4877-6643-8817, v. 2

According to the FTC, the need for data security should be factored into all business decision-making.

84.   In 2016, the FTC updated its publication, *Protecting Private Information: A Guide for Business*, which establishes cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of Private Information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[40]

85.   The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[41]

86.   The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must

---

[40] *See* Federal Trade Commission, October 2016, "Protecting Private information: A Guide for Business," available at https://www.bulkorder.ftc.gov/system/files/publications/2_9-00006_716a_protectingpersinfo-508.pdf (last acc. Apr. 14, 2023).
[41] *See id.*

20

take to meet their data security obligations.

87.    These FTC enforcement actions include actions against entities failing to safeguard PII/PHI such as Defendant. *See, e.g., In the Matter of LabMD, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

88.    HealthEC failed to properly implement basic data security practices widely known throughout the industry. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to patient Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

89.    Defendant was at all times fully aware of its obligations to protect the Private Information of its clients' and customers' current and former patients, members, and other participants that was entrusted to it. Defendant was also aware of the significant repercussions that would result from their failure to do so.

**F.  HealthEC Fails to Comply with Industry Standards**

90.    As shown above, experts studying cyber security routinely identify organizations holding PII/PHI as being particularly vulnerable to cyber-attacks because of the value of the information they collect and maintain.

91.    A number of industry and national best practices have been published and are widely used as a go-to resource when developing an institution's cybersecurity standards. The Center for Internet Security's (CIS) CIS Critical Security Controls (CSC) recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including 18 Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control

21

4877-6643-8817, v. 2

of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[42]

92. In addition, the National Institute of Standards and Technology (NIST) recommends certain practices to safeguard systems, *infra,* such as:

- Control who logs on to your network and uses your computers and other devices.

- Use security software to protect data.

- Encrypt sensitive data, at rest and in transit.

- Conduct regular backups of data.

- Update security software regularly, automating those updates if possible.

- Have formal policies for safely disposing of electronic files and old devices.

- Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.[43]

93. Upon information and belief, HealthEC failed to meet the minimum standards of both the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1,

---

[42] *See* https://www.rapid7.com/solutions/compliance/critical-controls/ (last acc. Apr. 14, 2023).
[43] Understanding The NIST Cybersecurity Framework, https://www.ftc.gov/business-guidance/small-businesses/cybersecurity/nist-framework (last acc. Apr. 14, 2023).

4877-6643-8817, v. 2

PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and other industry standards for protecting Plaintiff's and the proposed Class Members' Private Information, resulting in the Data Breach.

**G. Defendant's Conduct Violates HIPAA and Evidences Its Insufficient Data Security**

94. HIPAA requires covered entities to protect against reasonably anticipated threats to the security of sensitive patient health information.

95. Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of sensitive patient health information. Safeguards must include physical, technical, and administrative components.

96. Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. § 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling Private Information like the data Defendant left unguarded. HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a)(1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

97. Defendant's Data Breach resulted from a combination of insufficiencies that demonstrate it failed to comply with safeguards mandated by HIPAA regulations.

98. Defendant breached its obligations to Plaintiff and the Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems, network, and data. Defendant's unlawful conduct includes, but is not limited to, the

23

following acts and/or omissions:

a. Failing to adequately protect patients' Private Information;

b. Failing to install the latest software patches, update its firewalls, check user account privileges, or ensure proper security practices;

c. Failing to practice the principle of least-privilege and maintain credential hygiene;

d. Failing to avoid the use of domain-wide, admin-level service accounts;

e. Failing to employ or enforce the use of strong randomized, just-in-time local administrator passwords;

f. Failing to ensure the confidentiality and integrity of electronic PHI/ Private Information it created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

g. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI/ Private Information to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

h. Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

i. Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

j. Failing to protect against reasonably anticipated uses or disclosures of

24

4877-6643-8817, v. 2

electronic PHI/ Private Information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3); and/or

k.    Failing to render the electronic PHI/ Private Information it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as it had not encrypted the electronic PHI/ Private Information as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key," 45 CFR § 164.304 (definition of encryption).

99.    As the result of HealthEC's violations, Defendant negligently and unlawfully failed to safeguard Plaintiff's and the Class Members' Private Information.

## H. Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identity Theft

100.    Cyberattacks in the healthcare industry are especially problematic because of the disruption they cause to the health treatment and overall daily lives of patients affected by the attack.

101.    For instance, loss of access to patient histories, charts, images, and other information forces providers to limit or cancel patient treatment due to a disruption of service.

102.    This leads to a deterioration in the quality of overall care patients receive at facilities affected by data breaches. This is an especially acute problem, because it is not as if incarcerated Class Members have any choice in who provides them care.

103.    Researchers have found medical facilities that experience a data security incident

incur an increase in the death rate among patients months and years after the attack.[44]

104. Researchers have further found that at medical facilities that experience a data security incident, the incident leads to a deterioration in patient outcomes, generally.[45]

105. Similarly, data security incidents inconvenience patients; these inconveniences include, but are not limited, to the following:

a. rescheduling of medical treatment;

b. being forced to find alternative medical care and treatment;

c. delays or outright cancellation of medical care and treatment;

d. undergoing medical care and treatment without medical providers having access to a complete medical history and records; and

e. the indefinite loss of personal medical history.[46]

106. Cyber-attacks that result in the removal of protected data are also considered a breach under HIPAA because there is an access of PHI not permitted under the HIPAA Privacy Rule:

A breach under the HIPAA Rules is defined as, "...the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." 45 C.F.R. § 164.40.

107. Data breaches represent a significant problem for patients who have already

---

[44] *See* Nsikan Akpan, *Ransomware and Data Breaches Linked to Uptick in Fatal Heart Attacks*, PBS (Oct. 24, 2019) https://www.pbs.org/newshour/science/ransomware-and-other-data-breaches-linked-to-uptick-in-fatal-heart-attacks (last accessed June 7, 2022).
[45] *See Data Breach Remediation Efforts and Their Implications for Hospital Quality*, Health Services Research https://onlinelibrary.wiley.com/doi/full/10.1111/1475-6773.13203 (last accessed June 7, 2022).
[46] *See, e.g.*, https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/ (last accessed September 1, 2021); https://healthitsecurity.com/news/data-breaches-will-cost-healthcare-4b-in-2019-threats-outpace-tech (last accessed on September 1, 2021).

4877-6643-8817, v. 2

experienced the inconvenience and disruption associated with a cyber-attack.

## I. The Data Breach Caused Plaintiff and the Class Members Injury and Damages

108.    Plaintiff and members of the proposed Class have suffered injury and damages from the unauthorized disclosure and misuse of their Private Information that can be directly traced to HealthEC, that has occurred, is ongoing, and/or imminently will occur.

109.    As stated prior, in the Data Breach, unauthorized cybercriminals were able to access the Plaintiff's and the proposed Class Members' Private Information, which is now being used or will imminently be used for fraudulent purposes and/or has been sold for such purposes and posted on the Dark Web for sale, causing widespread injury and damages.

110.    The ramifications of HealthEC's failure to keep Plaintiff's and the Class's Private Information secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, or other information, such as addresses, without permission, to commit fraud or other crimes.

111.    Because HealthEC failed to prevent the Data Breach, Plaintiff and the proposed Class Members have suffered, and will imminently suffer, and will continue to suffer injury-in-fact and damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the Class Members have suffered, and will imminently suffer:

    a.    The loss of the opportunity to control how Private Information is used;

    b.    The diminution in value of their Private Information;

    c.    The compromise and continuing publication of their Private Information;

    d.    Out-of-pocket expenses associated with the prevention, detection, recovery,

27

4877-6643-8817, v. 2

and remediation from identity theft or fraud;

      e.     Lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

      f.     Delay in receipt of tax refund monies;

      g.     Unauthorized use of stolen Private Information;

      h.     Emotional distress; and,

      i.     The continued risk to their Private Information, which remains in the possession of HealthEC and is subject to further breaches so long as HealthEC fails to undertake the appropriate measures to protect the Private Information in its possession.

112.     Furthermore, the Data Breach has placed Plaintiff and the proposed Class Members at an increased risk of fraud and identity theft.

113.     There are myriad dangers which affect victims of identity theft, including: cybercriminals opening new financial accounts, credit cards, and loans in victim's names; victim's losing health care benefits (medical identity theft); hackers taking over email and other accounts; time and effort to repair credit scores; losing home due to mortgage and deed fraud; theft of tax refunds; hackers posting embarrassing posts on victim's social media accounts; victims spending large amounts of time and money to recover their identities; experiencing psychological harm and emotional distress; victims becoming further victimized by repeat instances of identity theft and fraud; cybercriminals committing crimes in victim's names; victims' personal data circulating the Dark Web forever; victims receiving increased spam telephone calls and emails; victims' children

28

or elderly parents having their identities stolen.[47]

114. The FTC recommends that identity theft victims take several costly steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, seeking a credit freeze, and correcting their credit reports.[48]

115. Identity thieves use stolen Private Information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

116. Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information.

117. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's Private Information to police during an arrest—resulting in an arrest warrant being issued in the victim's name. That can be even more problematic and difficult to remedy for someone who already has a criminal record.

118. Further, according to the Identity Theft Resource Center's 2021 Consumer Aftermath Report, identity theft victims suffer "staggering" emotional tolls: "For example, nearly 30% of victims have been the victim of a previous identity crime; an all-time high number of

---

[47] *See* Gaetano DiNardi, Aura.com, "How Bad Is Identity Theft? Is It Serious?" (December 14, 2022) available at https://www.aura.com/learn/dangers-of-identity-theft#:~:text=Fraudsters%20can%20open%20new%20accounts,to%20repair%20your%20credit%20score (last acc. Feb. 27, 2023).

[48] *See* https://www.identitytheft.gov/Steps (last visited September 1, 2021).

29

victims say they have contemplated suicide. Thirty-three percent reported not having enough money to pay for food and utilities, while 14% were evicted because they couldn't pay rent or their mortgage. Fifty-four percent reported feelings of being violated."[49]

119. What's more, theft of PHI is also gravely serious outside of the traditional risks of identity theft. In the last two decades, as more and more of our lives become interconnected through the lens of massively complex cloud computing, Private Information/PHI is a valuable property right.[50]

120. The value of sensitive information is axiomatic; one need only consider the value of Big Data in corporate America, or that the consequences of cyber theft include heavy prison sentences. Even the obvious risk to reward analysis of cybercrime illustrates beyond doubt that Private Information has considerable market value.

121. Theft of PHI, in particular, is problematic because: "A thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[51]

122. Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase PII/PHI on the black market for the purpose of

---

[49] *See* Jason Steele, *Credit Card and ID Theft Statistics*, CreditCards.com (June 11, 2021), avail. at https://www.creditcards.com/statistics/credit-card-security-id-theft-fraud-statistics-1276/ citing Identity Theft Resource Center, "2021 Consumer Aftermath Report," May 26, 2021 available at https://www.idtheftcenter.org/post/the-identity-theft-resource-centers-2021-consumer-aftermath-report-reveals-impacts-on-covid-19-identity-crime-victims/ (last acc. Feb. 27, 2023).

[50] *See, e.g.*, John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private information") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("Private information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[51] *See Medical Identity Theft, Federal Trade Commission Consumer Information* (last visited: June 7, 2022), http://www.consumer.ftc.gov/articles/0171-medical-identity-theft.

target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

123. It must also be noted there may be a substantial time lag–measured in years– between when harm occurs versus when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used.

124. PHI and PII are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

125. Where the most Private Information belonging to Plaintiff and Class Members was accessible from HealthEC's network, there is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and the Class Members are at an increased risk of fraud and identity theft for many years into the future.

126. Thus, Plaintiff and the Class Members must vigilantly monitor their financial and medical accounts for many years to come.

127. According to cybersecurity experts, "[r]eports show the value of a health record can be worth as much as $1,000, whereas on the dark web, a credit card number is worth $5 and Social Security numbers are worth $1."[52]

128. Social Security numbers are among the worst kind of Private Information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to

---

[52] Sanjay Cherian, Forbes Magazine, "Healthcare Data: The Perfect Storm," January 14, 2022, available at https://www.forbes.com/sites/forbestechcouncil/2022/01/14/healthcare-data-the-perfect-storm/?sh=28523ee56c88 (last acc. June 19, 2023).

31

change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud.[53]

129.    For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[54] Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

130.    Moreover, it is not an easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[55]

131.    This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than

---

[53] *See* U.S. Social Security Administration, "Identity Theft and Your Social Security Number," Publication No. 05-10064, July 2021, available at https://www.ssa.gov/pubs/EN-05-10064.pdf (last acc. Feb. 25, 2023)
[54] *See id.*
[55] *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR, Brian Naylor, Feb. 9, 2015, http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited September 1, 2021).

32

4877-6643-8817, v. 2

10x on the black market."[56] Medical information is especially valuable to identity thieves. The asking price on the Dark Web for medical data is $50 per person and up.[57]

132.    Accordingly, the Data Breach has caused Plaintiff and the proposed Class Members a greatly increased risk of identity theft and fraud, in addition to the other injuries and damages set forth herein, specifically the imminent identity fraud and criminal fraudulent activity, fraudulent charges, theft of monies, and attendant costs; lost time and efforts in remediating the impact of the Data Breach, and other injury and damages as set forth in the preceding paragraphs.

133.    HealthEC knew or should have known of these harms which would be caused by the Data Breach they permitted to occur, and strengthened its data systems accordingly.

## CLASS ALLEGATIONS

134.    Plaintiff sues on behalf of herself and the proposed Class ("Class"), defined as follows:

> All individuals whose Private Information was compromised or disclosed in Defendant's Data Breach between July 14, 2023 and July 23, 2023, including those persons who received notice from HealthEC of the Data Breach.

135.    The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendant or its parent has a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims

---

[56] *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, Tim Greene, Feb. 6, 2015, http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited September 1, 2021).
[57] *See* Omri Toppol, *Email Security: How You Are Doing It Wrong & Paying Too Much*, LogDog (Feb. 14, 2016), https://getlogdog.com/blogdog/email-security-you-are-doing-it-wrong/ (last accessed September 1, 2021).

in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

136. The Class defined above is identifiable through Defendant's business records.

137. Plaintiff reserves the right to modify or amend the definition of the proposed Class, as well as add subclasses, before the Court determines whether certification is appropriate.

138. The proposed Class meets the criteria for certification under Fed. Civ. P. 23(a), (b)(2), and (b)(3).

139. <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, Plaintiff believes that the proposed Class includes potentially millions of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant' records. Current information indicates that 4,452,782 individuals were impacted and damaged by this Data Breach.[58]

140. <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.    Whether Defendant engaged in the conduct alleged herein;

    b.    When Defendant learned of the Data Breach;

    c.    Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

---

[58] *See* U.S. Department of Health and Human Services Office for Civil Rights, Breach Portal: Notice to the Secretary of HHS Breach of Unsecured Protected Health Information, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf;jsessionid=CC9649BC4B9D187447D7061 E00234712 last accessed Jan. 30, 2024.

4877-6643-8817, v. 2

d.    The nature of Defendant's response to the Data Breach and whether its response was adequate;

e.    Whether Defendant unlawfully shared, lost, or disclosed Plaintiff's and Class Members' Private Information;

f.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

g.    Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

h.    Whether Defendant's Data Breach Notice was reasonable;

i.    Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Private Information;

j.    Whether Defendant breached that duty and was negligent in maintaining, protecting, and securing Private Information;

k.    Whether Defendant owed contractual duties to Plaintiff and the Class to safeguard their Private Information;

l.    Whether Defendant breached contractual promises to safeguard Plaintiff's and the Class's Private Information;

m.    Whether Defendant was unjustly enriched;

n.    Whether Defendant's conduct was likely to deceive the public;

o.    Whether Defendant is liable for negligence or gross negligence;

p.    Whether the Data Breach caused Plaintiff and the Class injuries;

q.    What the proper damages measure is; and

35

4877-6643-8817, v. 2

r.    Whether Plaintiff and the Class are entitled to damages, or injunctive relief.

140.    Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

141.    Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

142.    Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

143.    Superiority. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual

36

4877-6643-8817, v. 2

Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

144. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

145. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

146. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

147. Plaintiff and the Class Members entrusted their Private Information to Defendant, directly or indirectly, as a condition of participating in HealthEC's clients' health insurance plans, of receiving medical treatment from Defendant's clients, or as a condition of receiving other services from HealthEC's clients.

148. Defendant owed to Plaintiff and Class Members a duty to exercise reasonable care in handling and using the Private Information in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

37

4877-6643-8817, v. 2

149.    Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure to adequately safeguard their Private Information in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that Private Information—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' Private Information by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

150.    Defendant owed to Plaintiff and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their Private Information. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

151.    Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and Class Members' Private Information.

152.    The risk that unauthorized persons would attempt to gain access to the Private Information, and misuse it, was foreseeable. Given that Defendant holds vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant's

38

databases containing the Private Information —whether by malware or otherwise.

153. Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff's and Class Members' Private Information, and the importance of exercising reasonable care in handling it.

154. Defendant breached its duties, and was negligent, by acts of omission or commission, by failing to use reasonable measures to protect the Plaintiff's and Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

b. Failing to adequately train employees on proper cybersecurity protocols;

c. Failing to adequately monitor the security of its networks and systems;

d. Failure to periodically ensure that their network system had plans in place to maintain reasonable data security safeguards;

e. Allowing unauthorized access to Plaintiff's and Class Members' Private Information; and

f. Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

155. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered and imminently will suffer actual, tangible, injury-in-fact and damages, including, without limitation: loss of the opportunity to control how

4877-6643-8817, v. 2

Private Information is used; diminution in value of their Private Information; the compromise and continuing publication of their Private Information; Out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud; lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; delay in receipt of tax refund monies; unauthorized use of stolen Private Information; the continued risk to their Private Information, which remains in the possession of HealthEC and is subject to further breaches so long as HealthEC fails to undertake the appropriate measures to protect the Private Information in its possession; and increased risk of fraud and identity theft.

156.    Plaintiff and the Class Members are entitled to compensatory, actual, and punitive damages as a result of the Data Breach.

157.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) properly notify affected victims of the Data Breach (ii) strengthen its data security systems and monitoring procedures; (iii) submit to future annual audits of those systems and monitoring procedures; and (iv) provide adequate credit monitoring to all Class Members.

158.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class Members in that the Private Information maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and the Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the exposure of their Private Information of Plaintiff and the Class Members.

## COUNT II
## NEGLIGENCE *PER SE*

40

4877-6643-8817, v. 2

**(On Behalf of Plaintiff and the Class)**

159. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

160. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

161. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, patients' Private Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the Class Members' sensitive Private Information.

162. Further, under HIPAA, Defendant had the duty to implement safeguards to prevent the misuse of the information and ensure the confidentiality, integrity, and availability of PHI.

163. Defendant violated its duties under Section 5 of the FTC Act, as well as HIPAA, by failing to use reasonable measures to protect Plaintiff's and the Class's Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to its employees and applicants in the event of a breach, which ultimately came to pass.

164. The harm that has occurred is the type of harm the FTC Act and HIPAA are intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid

41

unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

165.    Defendant had a duty to Plaintiff and the Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and the Class's Private Information.

166.    Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

167.    Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations, including HIPAA, constitutes negligence *per se*.

168.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and Class Members would not have been injured.

169.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and Class Members to suffer the foreseeable harms associated with the exposure of their Private Information.

170.    Had Plaintiff and Class Members known that Defendant did not adequately protect their Private Information, Plaintiff and Class Members would not have entrusted Defendant with their Private Information.

171.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will imminently suffer, actual, tangible, injury-in-fact and damages, including, without limitation: loss of the opportunity to control how Private Information is used; diminution in value of their Private Information; the compromise and continuing

42

4877-6643-8817, v. 2

publication of their Private Information; out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud; lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; delay in receipt of tax refund monies; unauthorized use of stolen Private Information; the continued risk to their Private Information, which remains in the possession of HealthEC and is subject to further breaches so long as HealthEC fails to undertake the appropriate measures to protect the Private Information in its possession; and increased risk of fraud and identity theft.

172.    Plaintiff and the Class Members are entitled to compensatory, actual, and punitive damages as a result of the Data Breach.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

173.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

174.    Defendant offered to provide technology services to facilitate the medical treatment of, or insurance and governmental benefits to, Plaintiff and Class Members in exchange for their Private Information and amounts paid for these services or benefits that included payments for reasonable data security.

175.    Plaintiff and the Class Members accepted Defendant's offer by providing Private Information to Defendant to facilitate their receipt of medical services, insurance or governmental benefits, or other services, and by paying for those services.

176.    Specifically, Plaintiff and the Class Members entered into valid and enforceable implied contracts with Defendant when she and they first applied for or received health insurance

4877-6643-8817, v. 2

plan benefits, governmental benefits, or medical treatment from Defendant's clients, and when Plaintiff's and the Class Members' Private Information was supplied to Defendant.

177. In turn, and through internal policies, Defendant agreed it would maintain the privacy of protected health information/ Private Information and not disclose the Private Information it collects to unauthorized persons without authorization, and that HealthEC would promptly notify Plaintiff and the Class Members of any breach of their unsecured PHI and Private Information.

178. Plaintiff and the Class Members would not have entrusted their Private Information to Defendant in the absence of such agreement with Defendant.

179. Defendant materially breached the contract(s) it had entered with Plaintiff and Class Members by failing to safeguard such information and failing to notify them promptly of the Data Breach that compromised such information. Defendant further breached the implied contracts with Plaintiff and Class Members by:

      a.    Failing to properly safeguard and protect Plaintiff's and Class Members' Private Information;

      b.    Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

      c.    Failing to ensure the confidentiality and integrity of electronic Private Information that Defendant created, received, maintained, and transmitted.

180. The injury-in-fact damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

181. Plaintiff and Class Members have performed as required under the relevant agreements, or such performance was waived by the conduct of Defendant.

4877-6643-8817, v. 2

182. The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

183. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

184. Defendant failed to advise Plaintiff and Class Members of the Data Breach promptly and sufficiently.

185. In these and other ways, Defendant violated its duty of good faith and fair dealing.

186. Plaintiff and Class Members have sustained damages because of Defendant's breaches of its agreement as set forth herein, including breaches thereof through violations of the covenant of good faith and fair dealing.

187. As a direct and proximate result of Defendant's breach of implied contract, Plaintiff and the Class Members have suffered injuries and damages as set forth herein, and are entitled to actual damages, consequential damages, and nominal damages.

**COUNT IV**
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**
**(On Behalf of Plaintiff and the Class)**

188. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

189. Upon information and belief, Defendant entered into virtually identical contracts

45

4877-6643-8817, v. 2

with its clients—medical providers, health insurance plans and payors, and governmental agencies—to provide information technology and/or other services to them, which included guarantees for reasonable data security practices, procedures, and protocols sufficient to safeguard the Private Information of Plaintiff and the Class Members that was to be entrusted to it.

190.    Such contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their Private Information that Defendant agreed to receive and protect through its services. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiff and the Class was the direct and primary objective of the contracting parties, and Plaintiff and Class Members were direct and express beneficiaries of such contracts.

191.    Defendant knew that if they were to breach these contracts with their clients, Plaintiffs and the Class would be harmed.

192.    Defendant breached its contracts with its clients and, as a result, Plaintiffs and Class Members were affected by this Data Breach when Defendant failed to use reasonable data security and/or monitoring measures that could have prevented the Data Breach.

193.    As foreseen, Plaintiff and the Class were harmed by Defendant's failure to use reasonable data security measures to securely store and protect the files in its care, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information.

194.    As a direct and proximate result of Defendant's breach of contract—third party beneficiary, Plaintiff and the Class Members have suffered injuries and damages as set forth herein, and are entitled to actual damages, consequential damages, and nominal damages.

<u>**COUNT V**</u>
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

46

4877-6643-8817, v. 2

195.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

196.     This claim is pleaded in the alternative to the breach of implied contractual duty claim and breach of third-party beneficiary contract claim.

197.     Plaintiff and Class Members conferred a benefit upon Defendant in the form of monies paid to Defendant or its clients, a portion of which was paid for Defendant's information technology services to facilitate medical treatment or other benefits and for data security, and by providing their Private Information to Defendant in order to receive such services.

198.     Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and Class Members.

199.     As a result of Defendant's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between the purchases made with reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for, and the purchases without unreasonable data privacy and security practices and procedures that they received.

200.     Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the proposed Class's payments and their Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and the proposed Class would not have provided their Private Information, nor used and paid for Defendant's services, had they known Defendant would not adequately protect their Private Information.

201.     Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and the Data Breach alleged herein.

4877-6643-8817, v. 2

## COUNT VI
## INVASION OF PRIVACY—INTRUSION UPON SECLUSION
### (On Behalf of Plaintiff and the Class)

202.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

203.    Plaintiff and the Class Members had a legitimate expectation of privacy to their Private Information and were entitled to the protection of this information against disclosure to unauthorized third parties.

204.    Defendant owed a duty to Plaintiff and the Class Members to keep their Private Information confidential.

205.    Defendant failed to protect said PHI and Private Information and exposed this highly-sensitive information of Plaintiff and the Class Members to unauthorized persons in the Data Breach.

206.    Defendant allowed unauthorized third parties access to and examination of the Private Information of Plaintiff and the Class Members, by way of Defendant's failure to protect the Private Information.

207.    The unauthorized release to, custody of, and examination by unauthorized third parties of the Private Information of Plaintiff and the Class Members is highly offensive to a reasonable person.

208.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff's and the Class Members' Private Information was disclosed to Defendant in connection with receiving medical care and treatment or other benefits, but privately with an intention that the Private Information would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and the Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

48

209. The Data Breach constitutes an intentional or reckless interference by Defendant with Plaintiff's and the Class Members' interests in solitude or seclusion, either as to their persons or as to their private affairs or concerns, or private quarters, of a kind that would be highly offensive to a reasonable person.

210. Defendant acted with a knowing state of mind when it permitted the Data Breach to occur because they had actual knowledge that its data security practices were inadequate and insufficient.

211. Defendant acted with reckless disregard for Plaintiff's and Class Members' privacy when they allowed improper access to their systems containing Plaintiff's and Class Members' Private Information.

212. Defendant was aware of the potential of a data breach and failed to adequately safeguard their systems and implement appropriate policies to prevent the unauthorized release of Plaintiff's and Class Members' Private Information.

213. Because Defendant acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and the Class Members.

214. As a direct and proximate result of the Defendant's invasion of privacy—intrusion into seclusion, Plaintiff and Class Members have suffered and imminently will suffer actual, tangible, injury-in-fact and damages, including, without limitation: loss of the opportunity to control how Private Information is used; diminution in value of their Private Information; the compromise and continuing publication of their Private Information; Out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud; lost opportunity costs and lost wages associated with the time and effort expended addressing and

49

trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; delay in receipt of tax refund monies; unauthorized use of stolen Private Information; the continued risk to their Private Information, which remains in the possession of HealthEC and is subject to further breaches so long as HealthEC fails to undertake the appropriate measures to protect the Private Information in its possession; and increased risk of fraud and identity theft.

215.    Plaintiff and the Class Members are entitled to compensatory, actual, and punitive damages as a result of the Data Breach.

216.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) properly notify affected victims of the Data Breach (ii) strengthen its data security systems and monitoring procedures; (iii) submit to future annual audits of those systems and monitoring procedures; and (iv) provide adequate credit monitoring to all Class Members.

217.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class Members in that the Private Information maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and the Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the exposure of their Private Information of Plaintiff and the Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, JANE DOE, Individually, and on behalf of all others similarly situated, demands a trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and

50

appointing her Counsel to represent the Class;

B.     Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.     Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.     Awarding Plaintiff and the Class damages that include applicable actual and compensatory damages, consequential, nominal, and punitive damages, as allowed by law, in an amount to be proven at trial;

E.     Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

F.     Awarding attorneys' fees and costs, as allowed by law;

G.     Awarding prejudgment and post-judgment interest, as provided by law;

H.     Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

I.     Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 30, 2024        Respectfully submitted,

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV (BPR 23045)
Andrew E. Mize (*Pro Hac Vice* forthcoming)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com

51

4877-6643-8817, v. 2

amize@stranchlaw.com

***Counsel for Plaintiff and the Proposed Class***

4877-6643-8817, v. 2